GREENIA et. al. vs. GREENIA et. al.

1. A citizen in this State died, leaving several slaves, and his next of kin were some brothers and nephews living in Canada, who were aliens, and two nephews living in this State, who were citizens. The slaves in such case are distributable equally among all, according to the statute of descents and distributions, without regard to alienage.

2. The 7th section of the act concerning descents and distributions, providing that "in making title by descent, it shall be no bar to a descendant, that any ancestor through whom he derives his descent from the intestate, is, as has been an alien," is exclusively applicable to real estate.

### APPEAL from Washington Circuit Court.

JOHNSON, for Appellants.

I. It is insisted that the court erred in overruling the motion to require respondent's attorney to show his authority for instituting the present suit. By this motion no imputation of improper conduct was attributed to the attorney. It is clear, that upon a proper case made out, the court will require the attorney to show his authority. McKeman et. al. vs. Patrick et. al., 4 Howard Miss. R. 333; Coge, Exr. vs. Foster, 5 Yerger (Ye.) R. 261; Wright vs McLemore, 10 Yerger (Ye.) Rep. 236; McAlexander vs. Wright, 3 Monroe (Ky.) Rep. 194; Keith vs. Wilson, C. Mo. Rep. 735. "The object of the rule is to prevent an attorney from appearing for any party on the employment and at the instance of a stranger, who may have

Greenia et. al. vs. Greenia et. al.

no interest in the cause, either legal or equitable." 3 Monroe Ky. R. p. 191; 6 Mo. R. 435, Did the appellant show a proper case? They showed by affidavit that the four brothers of Louis Greenia were natives and residents of Canada; that only one had been to this country, and that was many years ago,—that one Joseph Beauchamp had come down to Potosi, declaring that he had purchased the interest of Louis Greenia's brothers, and claiming the property as his own, and had told appellant that he had employed the attorney to manage the case for him, and the appellant further stated that whatever interest the brothers of Louis Greenia may have had, they have none now, and they further believe, from the facts, that the present plaintiff never authorized the attorney to bring this suit in their names. It was admitted by respondent's attorney, that Beauchamp had declared that he owned the interest of the brother of Louis Greenia. The attorney read an affidavit of Beauchamp stating that he had authority from some of Louis Greenia's brothers and from the respondents of others to collect their shares by suit or otherwise; and proved that he acted as attorney in presence of Beauchamp. It is contended that the affidavit of Beauchamp was no answer to the affidavit and proof of appellants. Beauchamp could not prove his authority by his own oath. If so, any stranger who would be willing to swear to his authority might collect the debts and legacies of foreigners without their knowledge or consent. Besides, Beauchamp was a perfect stranger, he showed no authority either written or verbal, and for aught that appears, might have been an imposter. It was both proved and admitted that he had declared that he had bought out the brothers of Louis Greenia, deceased, and when it becomes necessary to make a different case he readily swears that he was authorized to collect their shares by suit or otherwise: and what casts a strong suspicion over the whole case is, that when he comes to name the legal respondents of deceased brothers in his affidavit as having authorized him, he names persons whose names are not inserted in the record as plaintiffs. Even admitting that Beauchamp could prove his authority by his own oath, it should at least appear that he was authorized by the plaintiff. It will be remarked by the court that the attorney pretended to no authority except from Beauchamp. This is one of the very cases provided for in the rule, viz: to prevent an attorney from acting on the employment of a stranger, who may, in fact, have an interest either legal or equitable in the suit. 3 Monroe Rep. 194. As a reason for enforcing this rule, the court will remark, that it was proved on the trial, that the appellant, Joseph Greenia, and his brother, the father of the two other appellants came to Missouri under a promise from their uncle that he would do something for them. This promise was undoubtedly well known to the father of appellants, who remained behind in Canada, and must have felt a lively interest in his children's welfare; and though it does not appear that Louis Greenia ever provided for them by will; the court will not presume that Francis Greenia, the father would set up any right which would defeat his own children, and particularly when they would at least get his share if he did not claim.

II Upon the merits it is insisted that the law is with the appellant. Before any party can inherit, he must possess inheritable blood. At common law an alien could not inherit lands, nor could a citizen inherit if the mediate ancestor was an alien. The bar of alienage was removed by act of parliament, passed in the 11 and 12 Wm. III, ch. 6; McCreery's Lessee vs. Somerville, 9 Wheat. R. 354. The impediment of the life of the ancestor is also removed by the 7th section of our statute of descents and distributions; laws of 1845. The section reads as follows: "In making title by descent, it shall be no bar to a demandant that any ancestor, through whom he derives his descent from the intestate is or has been an alien. A precisely similar statute was construed by the court of appeals in Virginia, and they decided that it not only removed the alienage but the impediment of the life of the ancestor. Jackson vs. Sanders, 2 Leigh's Rep. The 7th section therefore, confers inheritable blood upon the appellants who are citizen nephews. The word "descent" used in this section is applicable to both kinds of property, and has been so used by our legislature since the State was first organized. See Ter. laws vol. 1, act of 1807, secs. 7, 9, 11, 14, 16; p. 129 et. seq.; act of 1815, secs. 9, 10, 12, 14, 17, 80; p. 400 et seq.; act of 1817, p. 509; act of 1822, sec. 37; p. 930. Laws of 1845, administration, act VI; sec. 4; p. 100. Descents and distributions, sec.

Greenia et. al. vs. Greenia et. al.

6. A comparison of these sections will show. that the word "descent" is applied sometimes to personality, and at others to realty, but most genearlly to both kinds of property. It is manifest, therefore, that this section makes the appellants heirs to the personal property— (the respondents do not contest our right to the realty.) If then the citizen nephew be heir by force of the 7th section, how can the alien brother be heir also? The law in conferring the right upon the appellants, certainly could not have intended that it should also be in the respondents. It is submitted, that reasons of public policy would rather favor a construction which would give the personalty to citizen nephews than to alien brothers.

### POLK, for appellee.

I. The bill of exceptions does not show that all the evidence given, is embodied in it; and such being the case this court will not reverse the judgment of the court below. Foster vs. Nowlin, 4 Mo. R 23; Hughes vs. Ellison, 5 Mo. R. 110.

II. The record shows that there was an admission of facts made by the parties, and the cause submitted by the parties to the court sitting as a jury,—and the court not asked to declare the law governing the case. In such case this court will not reverse the judgment of the court below. Von Phul vs. the city of St. Louis, 9 Mo. R. 49; McEvoy vs. Lane et. al., Mo. R. 48; Vaughn vs. B. k. 9 Mo. R. 381.

### NAPTON, J., delivered the opinion of the court.

A citizen in this State died, leaving several slaves, and his next of kin were some brothers and nephews living in Canada, who were aliens, and two nephews living in this State, who were citizens. The question was, whether the slaves should be given to the two nephews who lived here, excluding the alien brothers and nephews from any share, or whether the property should be equally distributed among all, according to the statute of descents and distributions, without regard to alienage. The latter course was taken by the county court, and sanctioned in appeal by the circuit court and we concur in the propriety of this decision.

An injurious argument has been made by the counsel here, the object of which was to construe the 7th section of an act concerning descents and distributions, as applicable both to personal property and to real estate. That section provides that "in making title by descent, it shall be no bar to a descendant, that any ancestor through whom he derives his descent from the intestate is or has been an alien." This section was designed to remove the bar of alienage or restrict it in certain cases and it was of course only designed to apply to subjects where such a bar previously existed. There is no basis upon which to rest any argument, therefore, derived from its mere phraseology, when no such bar ever did exist here, to the inheritance of personal property, either by the common law or by any statute. To what avail then is it

to prove that the legislature meant to remove the bar of alienage, in certain cases, when in no case was it ever held to be any obstacle to a claim by inheritance to personal estate? The object of this section was surely not to create a bar—to make alienage an obstacle where it never was before; but to remove it as a bar in certain specific cases.

But the language of this section is certainly most singularly unfortu- nate, if it was designed to include personal property. Not only is the word descent used, about which different opinions might be entertained, but the word demandant is also used—a phrase which never could be applicable to any thing but real estate. The word demandant is a technical word, and is well understood to mean a claimant, a plaintiff in a real action, and it is never applied to designate the plaintiff in a personal action. We think it quite clear, that this section applies ex- clusively to real estate.

It is said that slaves ought to be regarded as real estate, that the same policy which prevents aliens from getting control over our lands, ought to prevail in relation to our slaves. This may be so. The ques- tion of policy we are not authorized to consider. The legislature have not made slaves real property; but have expressly declared them to be personal property, and this settles the question with the court.

Judgment affirmed.